**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1376
_____

OBERMAYER, REBMANN, MAXWELL & HIPPEL

v.

JOHN H.C. WEST, III; RESTORATIVE PROGRAMMING, INC;
FAST TRAK INVESTMENT, CO. LLC; RJC FUNDING, LLC


John H.C. West, III; Restorative Programming, Inc.,
                                                    Appellant

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-15-cv-00081)
District Judge:  Honorable Cathy Bissoon

_____

Submitted under Third Circuit LAR 34.1(a)
on May 24, 2017

Before:  HARDIMAN, ROTH and FISHER, <u>Circuit Judges</u>

(Opinion filed: February 27, 2018)

_____

OPINION[*]
_____

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

ROTH, Circuit Judge

The parties ask us to decide whether certain terms of their contractual agreements are enforceable under New York law. Because we conclude that they are, we will affirm the judgment of the District Court.

## I.  Factual and Procedural History

The facts of this case are undisputed. At issue is only whether a contract for funding pending the resolution of litigation is enforceable. John West and his company Restorative Programming, Inc. (collectively "West") initiated suit against Reed Smith LLP, alleging that the firm committed legal malpractice in an unrelated matter. Obermayer Rebmann Maxwell & Hippel LLP represented West in the suit against Reed Smith. While awaiting the outcome of the Reed Smith litigation, West, on several occasions, obtained money from Fast Trak Investment Company LLC and RJC Funding LLC (collectively "Fast Trak").

Fast Trak and West entered a number of contractual agreements, which memorialized the terms of their arrangements. Each agreement included a provision providing that "the Purchaser has agreed to purchase from Seller a portion of the Proceeds [derived from the Reed Smith litigation] for monetary consideration."[1] In addition, the governing agreements explicitly state that: "This is a non-recourse purchase agreement. There is no obligation for the seller to make payments except from the

---

[1] *See, e.g.*, App. 157.

proceeds of [the Reed Smith litigation]."[2]  The agreements also included provisions that set forth the terms of repayment.  Those provisions include a "Payment Schedule," and a list of specific "Total Pay-Off Amounts," which increase bi-annually.  The first of these agreements was executed on February 27, 2013.  In exchange for their purchases of portions of the Reed Smith litigation proceeds, Fast Trak paid West a total of $158,000.

In response to his request for additional money, Fast Trak sent West a letter on September 17, 2014, which acknowledged that West owed Fast Trak a total of $331,160.24 at that time.[3]  Fast Trak gave West an additional $6,000 after he signed an agreement acknowledging that he was "aware of the current sum due," that those sums would not be reduced at the conclusion of the Reed Smith litigation, and that "the contractual payback schedules contained within each funding contract are fair and reasonable."[4]

The Reed Smith litigation settled in December 2014.  Fast Trak sent West a payoff letter, which showed that he owed a sum of $373,885 from the settlement proceeds.  West refused to pay Fast Trak any portion of the proceeds from the settlement.  He claimed that the underlying agreements are unenforceable because they are usurious.  Obermayer, which received the Reed Smith settlement proceeds as West's counsel, commenced an interpleader action and deposited the disputed funds into the District Court.  Fast Trak asserted cross-claims against Obermayer and West for breach of contract and against

---

[2] *See, e.g.*, *id.*
[3] App. 292 ("Please be advised that the current sum due Fast Trak Legal Funding is now $211,412.84 and the current sum due RJC Funding, LLC, is now $119,747.40 . . ..")
[4] App. 292.

West for enforcement of certain liens. The District Court subsequently dismissed Obermayer and granted Fast Trak's motion for summary judgment. This appeal followed.

## II.  Discussion[5]

West appeals the District Court's grant of summary judgment and the amount the court subsequently awarded Fast Trak. With respect to the District Court's grant of summary judgment, our review is plenary, "and we apply the same standard that the District Court applied in determining whether summary judgment was appropriate."[6] We may affirm the grant of summary judgment only if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[7] As a federal court sitting in diversity, we "are required to apply the substantive law of the state whose laws govern the action,"[8] and in this case, it is undisputed that we must apply the substantive law of New York.

## A.

West contends that the underlying purchase agreements are unenforceable because they are usurious. In New York, a loan recipient is relieved of all repayment obligations with respect to a loan that is later found to be usurious.[9] The State's highest court has, in

---

[5] The District Court had diversity of citizenship jurisdiction under 28 U.S.C. § 1332, and we have jurisdiction under 28 U.S.C. § 1291.
[6] *Norfolk S. Ry. Co. v. Basell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008).
[7] *Id.* (quoting Fed. R. Civ. P. 56(c)).
[8] *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 378 (3d Cir. 1990).
[9] *Pemper v. Reifer*, 264 A.D.2d 625, 626 (N.Y. App. Div. 1999) (citations omitted) ("It is well established that where a lender enters into a usurious transaction, the borrower is relieved of all further obligation to pay both principal and interest.").

no uncertain terms, instructed that New York's "[u]sury laws apply only to loans or forbearances . . .."[10] Thus, if the transaction in dispute "is not a loan, there can be no usury, however unconscionable the contract may be."[11] Here, the parties dispute whether the arrangements at issue may be properly characterized as loan agreements. Because we find that the underlying transactions were not loan agreements, we hold that they are not governed by New York's usury laws.

New York recognizes the absolute right to repayment or some form of security for the debt as a defining characteristic of a loan. Its courts have explicitly stated that "[f]or a true loan it is essential to provide for repayment absolutely and at all events or that the principal in some way be secured . . .."[12] Thus, a transaction that neither guarantees the lender an absolute right to repayment nor provides it with security for the debt is not a loan, and as a result, cannot be subject to New York's usury laws. The agreements at issue in this case clearly demonstrate that Fast Trak had no absolute right to repayment. They explicitly provide that West was required to repay Fast Trak if, and only if, he recovered money in the Reed Smith litigation. Fast Trak's right to repayment, then, was contingent on the success of the Reed Smith suit and was not absolute. Had West recovered nothing, Fast Trak would have had no contractual right to repayment. Accordingly, the disputed transactions were not "loans" and are therefore not subject to

---

[10] *Seidel v. 18 E. 17 St. Owners, Inc.*, 598 N.E.2d 7, 11-12 (N.Y. 1992).
[11] *Id.* (citations and internal quotation marks omitted).
[12] *MoneyForLawsuits V LP v. Rowe*, No. 4:10-CV-11537, 2012 WL 1068171, at *10 (E.D. Mich. Jan. 23, 2012), *report and recommendation adopted,* No. 10-CV-11537, 2012 WL 1068760 (E.D. Mich. Mar. 29, 2012), *aff'd sub nom.*, 570 F. App'x 442 (6th Cir. 2014) (internal quotation marks and citation omitted).

New York's usury statute. Because the usury statute is inapplicable to the agreements between Fast Trak and West, those agreements are enforceable. Entry of summary judgment for Fast Trak, therefore, was proper.

**B.**

Having determined that Fast Trak was entitled to judgment as a matter of law, we must determine whether the District Court properly calculated the amount owed to Fast Trak. West challenges the District Court's calculation of damages on two grounds. First, he claims that the District Court misconstrued the Payment Schedule by calculating increases in the repayment amount from the date of the first purchase, rather than on the date of West's actual recovery. Second, he argues that the increases should not have continued after the disputed funds were deposited into the District Court. Both contentions are unavailing.

The agreements themselves and the parties' subsequent correspondence demonstrate that the District Court properly concluded that the "Payment Schedules" contemplate a bi-annual increase in the repayment amount commencing on the date Fast Trak made its initial purchase, rather than on the date of West's actual recovery. First, the agreements explicitly required West to repay Fast Trak within five days of receiving proceeds from the Reed Smith litigation.[13] The District Court concluded that interpreting the agreements as establishing that the repayment increases did not begin until the date of West's recovery would create tension between the Payment Schedule and the provisions requiring West to satisfy his repayment obligation within five days of receiving the

---

[13] App. 20.

6

relevant proceeds.  We agree.  Second, the record establishes that West understood that the repayment increases would be based on the dates of purchase rather than on the date of West's actual recovery.  West signed a document indicating that he understood and accepted this arrangement when he sought additional funds from Fast Trak.[14]  That document provided that West owed Fast Trak $331,160.24 as of September 7, 2014 and that the sum would increase fourteen days later—which marked a bi-annual anniversary.[15]  This figure incorporated bi-annual increases that began on the date of the initial purchase, and West agreed that it was accurate and reasonable.[16]  In light of this clear evidence, the District Court properly found that West's obligations under the agreements' Payment Schedules began on the purchase dates.

West's claim that the District Court improperly considered the bi-annual repayment increases as continuing through the date of judgment also fails.  He claims that the repayment increases halted on the day Obermayer deposited the disputed funds into the trial court.  We are unpersuaded by West's attempt to evade his contractual obligations.  The parties' agreements establish that the repayment increases were to continue until West's obligations were satisfied.  Such satisfaction did not occur until the date of the District Court's judgment.  This conclusion is supported by *MoneyForLawsuits V LP v. Rowe*, which involved indistinguishable circumstances.[17]  West has failed to identify any authority demanding a different result.  Accordingly, we

---

[14] *See* App. 292.
[15] *Id*
[16] *Id.*
[17] 2012 WL 1068171 (Judg., ECF No. 217).

conclude that the District Court properly awarded the precise damages that were within the contemplation of the parties.

### III.    Conclusion

For the foregoing reasons, we will affirm the judgments of the District Court.